**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **DLJ MORTGAGE CAPITAL, INC.** | |
| **Appellant/Creditor,** | |
| **v.** | **CIVIL NO. 19-1609 (PAD)** |
| **FEDERICO A. RAMOS GARCÍA, <u>et al.</u>** | |
| **Appellee/Debtor.** | |

**OPINION AND CERTIFICATION TO THE PUERTO RICO SUPREME COURT**

Delgado-Hernández, District Judge.

DLJ Mortgage Capital, Inc. ("DLJ") appeals from the bankruptcy court's determination that DLJ does not have a valid lien and, in consequence, lacks a secured claim over debtor's real property.[1] It points out that if the bankruptcy court's ruling were sustained, it would cause instability and uncertainty over all transactions recorded in light of Puerto Rico Law No. 216 of December 27, 2010, known as the Act to Expedite the Registry of the Property, P.R. Laws. Ann. tit. 30 § 1821, <u>et. seq.</u> ("Law 216") and will impact, not only the parties to this litigation, but the capital investment and economic climate in Puerto Rico, as well as all real estate transactions on the Island. The dispute raises a legal issue with important policy implications that reach beyond the specific case at hand, and the court has found no controlling precedent or authority in Puerto Rico to allow it to predict its course. Hence, pursuant to Rule 25 of the Puerto Rico Supreme Court's Regulation, P.R. Laws Ann. tit. 4 Ap. XXI-B, R. 25, the court certifies the following questions to the Puerto Rico Supreme Court:

---

[1] The finding was made in an adversary proceeding filed by appellee, Federico A. Ramos-García, to determine the validity and extent of the lien and to declare DLJ's mortgage wholly unsecured, under 11 U.S.C. § 506. <u>See</u>, Docket No. 1 in <u>Ramos-Garcia</u> v. <u>DLJ Mortgage Capital, Inc., *et al.*</u>, Adv. No 15-00297 (BKT).

1. Whether the principle of successive claim of ownership ("tracto") that requires the debtor to be listed as a registered owner of its property is a pre-condition to consider a mortgage deed validly recorded by operation of Law 216?

2. Whether a recordation validly made under Law 216 is affected when the owner of the property participated in the events that led to non-recordation of its vesting deed at the Registry of Property by not correcting the defects notified by the Registrar?

## I.     RELEVANT BACKGROUND

### A.  The Adversary Proceeding

On July, 1, 2014, Federico A. Ramos-García, filed for relief under Chapter 13 of the Bankruptcy Code. See, Docket No. 1 in Bankruptcy Case No. 14-05463 (BKT).  On December 14, 2015, he filed a "Complaint to Determine Validity and Extent of DLJ Mortgage Capital's and Banco Popular de Puerto Rico's Lien and to Establish Their Claims as Wholly Unsecured Claims." See, Docket No. 92 in Bankruptcy Case No. 14-05463 and Docket No. 1 in Adv. No. 15-00297 (BKT).[2]  He alleged that because he is not the recorded owner of the property, the Mortgage Deed recorded in favor of DLJ lacks chain of title ("tracto"), and as such, should be considered unsecured.  Id. at ¶¶ 9-18.  A copy of the Complaint is attached (**Exhibit I** of Appendix).  Following discovery in the adversary proceeding, the parties stipulated various facts.

### B.  Factual Stipulations

Ramos-García is the sole civil owner of a real property ("Property") located in Las Cuevas Ward, Km. 13.3, Trujillo Alto, Puerto Rico, described in the Property Registry as:

---

[2] Banco Popular was listed as a defendant in the adversary proceeding as it was the holder of a mortgage loan and related notes guaranteeing a second mortgage loan over the property at issue.  However, on July of 2016, it reached a Settlement Agreement/Stipulation with the debtor, which the bankruptcy court approved at Docket No. 35 of Adv. No. 15-00297 (BKT).

> URBANA: Solar en el Barrio Cuevas del Municipio de Trujillo Alto, Puerto Rico, con una cabida superficial de veintiún (21) centésimas de cuerda equivalente a ochocientos diecisiete punto cincuenta y dos (817.52) metros cuadrados. En lindes por el Norte, en trece punto sesenta y seis (13.66) metros con terrenos de Juan Feliciano; por el Sur, en catorce punto treinta y nueve (14.39) metros con carretera estatal #175; por el Este, en cincuenta y nueve punto veinte (59.20) metros con terrenos de Aguedo Adorno y por el Oeste, en cincuenta y ocho punto veintinueve metros (58.29) con terrenos de Cándido Arroyo.

> Joint Stipulations at ¶ 3.

The Property is currently in possession of Ramos-García's mother, Nydia Elisa García-Monge. Joint Stipulations at ¶ 4. Ramos-García obtained **partial** legal title and ownership of the Property through a Declaration of Heirs entered in the State (Puerto Rico) Court Case No. FJV2003-09402, establishing that Ramos-García, his sister, Rosa Amarilis Ramos-García, and mother, Nydia Elisa García-Monge are the heirs of Ramos-García's deceased father, Catalino Ramos-Díaz. Joint Stipulations at ¶ 5.

Ramos-García obtained **sole** legal title over the Property through a donation executed by way of Deed No. 1, dated January 16, 2006, authorized by Notary Ramón Rivera-Cano. With this Deed, Ramos-García's mother and sister donated their participation in the Property to Ramos-García. Joint Stipulations at ¶ 6. The Property Registrar, however, notified certain defects on April 14, 2008 with regards to the Donation Deed, but the period to correct them expired on June 16, 2008. Joint Stipulations at ¶ 7.[3] Further, the Heirs' Declaration, which provided "chain of

---

[3] The Registrar of Property notified the following defects: The certificate of release of estate tax lien ("relevo de hacienda") must be amended for it incorrectly states that the value of the property and the participation of the deceased (Catalino Ramos-Díaz) in the property are for the same amount when from the document filed it appears that the property is part of a legal conjugal partnership ("ganancial"). Joint Stipulations at ¶ 8. The releases accompanied with the donations do not add up to the value that is provided in the Donation Deed, therefore the other documents pending (Mortgage Deed No. 140 of March 14, 2003, Mortgage Deed No. 141 of March 14, 2008, Mortgage Deed No. 125 of December 16, 2004 and the Declaration of Heirs of December 28, 2005) must be clarified. Id.

title" ("tracto") for Deed No. 1 was also notified with a defect by the Registrar of the Property on April 14, 2008. Joint Stipulations at ¶ 9. And the period to correct those defects similarly expired on June 16, 2008. Id.[4]

On March 14, 2008, Ramos-García executed Mortgage Deed No. 140 before Notary Rafael A. Ojeda-Diez, to guarantee a mortgage note in the principal sum of $120,000.00 with interest at the rate of 8.625% per annum in favor of Doral Mortgage, LLC. This document was presented to the Registry of the Property on June 3, 2009. Joint Stipulations at ¶ 11.[5] On the same day, Ramos-García executed a Second Mortgage Deed in the amount of $22,500.00 with accruing annual interests of 8.625%, which was also presented to the Property Registry on June 3, 2009.[6] Joint Stipulations at ¶ 12. On December 27, 2010, Law 216 became effective, and by virtue of its provisions, the First and Second Mortgage Deeds were recorded at the Property Registry. Joint Stipulations at ¶ 13.

On June 21, 2017, DLJ deposed Ramos-García. Joint Stipulations at ¶ 14. During the deposition, he testified that approximately three years after Mortgage Deed No. 140 was executed, Notary Rivera-Cano informed him that the Property Registry had notified certain defects in connection with the Donation Deed. Joint Stipulations at ¶ 15. Moreover, he testified that the Notary informed him he had to take action regarding defects that the Registrar of Property notified regarding an error in the Certificate of Release of Estate Tax Lien. Joint Stipulations at ¶ 16. And he testified that: (i) he personally prepared the Certificate of Estate Tax (Joint Stipulations at ¶ 17);

---

[4] The Registrar of Property notified the following defect: The certificate of release of estate tax lien (relevo de Hacienda) must be amended for it incorrectly states that the value of the property and the participation of the deceased (Catalino Ramos Díaz) in the property are for the same amount when from the document filed it appears that the property is part of a legal conjugal partnership ("ganancial") and/or was owned by both the deceased and his wife Nydia Elisa García-Monge. Joint Stipulations at ¶ 10.

[5] This was made before the time to expiration of the notification defects.

[6] The Second Mortgage Deed was executed in favor of Banco Popular.

(ii) he did not take any steps to correct defects the Registrar of Property notified as to the Certificate of Estate Tax Lien that he prepared (Joint Stipulations at ¶ 18); and (iii) he may not have corrected the defects due to lack of knowledge (Joint Stipulations at ¶ 19).

Currently, the Property is recorded in the Property Registry in favor of Ramos-García's parents, Catalino Ramos-Díaz and Nydia García-Monge. Joint Stipulations at ¶ 20. Copy of the "Joint Motion Submitting Factual Stipulations" is attached (**Exhibit II** of Appendix).

### C. The Opinion and Order

On March 14, 2018, DLJ moved for summary judgment asking the bankruptcy court to declare DLJ a secure creditor in the main bankruptcy case because as successor to Doral, its mortgage was validly recorded in the Property Registry under Puerto Rico law. See, Docket No. 70 in Adv. No. 15-00297 (BKT). Copy of the motion for summary judgment is attached (**Exhibit III** of Appendix). On April 12, 2018, Ramos-García opposed DJL's request. See, Docket No. 76 in Adv. No. 15-00297 (BKT). Copy of the opposition is attached (**Exhibit IV** of the Appendix).

On June 4, 2019, the bankruptcy court issued an Opinion and Order denying DLJ's motion for summary judgment, finding that DLJ does not have a valid lien for lack of successive record ("tracto") and, in consequence, lacks a secured claim over the property. See, Docket No. 77 in Adv. No. 15-00297 (BKT). Copy of the Opinion and Order is attached (**Exhibit V** of Appendix). The bankruptcy court entered judgment accordingly. See, Docket No. 78 in Adv. No. 15-00297 (BKT).[7] This appeal ensued.

In ruling on the motion for summary judgment, the bankruptcy court reasoned that: (i) Law 216 creates a rebuttable presumption of valid recordation; (ii) the presumption can be easily

---

[7] Twelve days later, on June 18, 2019, DJL filed a Notice of Appeal and Statement of Election to District Court. See, Docket No. 81 in Adv. No. 15-00297 (BKT).

rebutted given the lack of "tracto," which constitutes a clear violation of the basic principle of "tracto sucesivo" found in Article 17 of Puerto Rico Mortgage and Registry of the Property Law, P.R. Laws Ann. tit. 30 § 6032 (id. at p. 101); (iii) in that sense, Law 216 is not a "free pass" for all mistakenly presented documents to be recorded and that remain registered, such that, if recordation is mistaken, it must be rectified as per Law 216 (in this case, through judicial intervention) (id.); and for that reason, (iv) Law 216 does not save DLJ from the "inevitable conclusion" that there is a defect in the recordation which prevents DLJ from having a valid registered lien on the Property. Id. Thus, the bankruptcy court found that DLJ does not have a valid lien, and by extension, has no secured claim over the debtor's property. Id. at p. 102.

On appeal, DLJ challenges the bankruptcy court's ruling on the validity and extent of its claim (Docket No. 8). The bankruptcy court's conclusions of law are reviewed *de novo* and its findings of fact for clear error. See, In re G.S.F. Corp., 938 F.2d 1467, 1474 (1st Cir. 1991); In re A&J Auto Sales, Inc., 223 B.R. 839 (D.N.H. 1998); Robb v. Schindler, 142 B.R. 589, 590 (D.Mass. 1992).

## II.     DISCUSSION

### A.  Puerto Rico Mortgage Law

Pursuant to Puerto Rico law, every mortgage must satisfy three essential elements in order to be validly constituted: (i) secure the fulfillment of a principal obligation (P.R. Laws Ann. tit. 31 § 5001), (ii) be stipulated in a deed and, (iii) be recorded at the Registry of Property. P.R. Laws Ann. tit. 30 § 2607. Without recordation, "[t]he mortgage deed turn[s] the promissory note into a personal obligation, unsecured, solely enforceable against the maker." Roig Commercial Bank v. Dueño, 617 F.Supp. 913, 915 (D.P.R. 1985). In other words, "[a] creditor [will] only ha[ve] an unsecured personal obligation regarding the underlying debt." Soto-Rios v. Banco Popular de

Puerto Rico, 662 F.3d 112, 121 (1st Cir. 2011); In re Aleman, 499 B.R. 236, 238 (2013)(noting

that recordation under Puerto Rico law is a "constitutive act" for a mortgage).

To gain access to the Property Registry, a mortgage deed must comply with the successive

chain of ownership ("tracto"). Along this line, Article 57 of Puerto Rico Mortgage Law of 2015

provides in part, that: "[i]n order to record documents that declare, convey, encumber, modify or

extinguish dominion and other real rights on real property, the right of the person who grants them

or in whose name the referred transactions or contracts are granted must appear previously

recorded." Recordation shall be *denied* if the right is recorded in the name of a person other than

the one who is granting the conveyance or lien. See, P.R. Laws Ann. tit. 30 § 2260. So, "today's

transferee shall be yesterday's acquirer, and the actual titleholder according to the registry shall be

tomorrow's transferee." Luis Rafael Rivera-Rivera, Derecho Registral Inmobiliario

Puertorriqueño, (3rd ed. 2012), p. 226 (quoting, Roca Sastre, Ramón María & Luis Roca-Sastre

Muncunill, Derecho Hipotecario, Tomo II (8th ed. 1995), p. 87).

### B. Law 216

Pursuant to Law 216, all documents presented in the Property Registry for recordation as

of April 30, 2010, with enumerated exceptions, are considered recorded as a matter of law. See,

P.R. Laws Ann. tit. 30 § 1821, et seq.; P.R. Regulation for the Implementation of Act No. 216,

Regulation No. 7988 of February 4, 2011; Soto-Rios v. Banco Popular de Puerto Rico, 662 F.3d

112, n.1.[8] Law 216 was enacted partly because of the Legislature's concern of the impact that the

---

[8] Law 216 contains several exceptions to its general disposition that are not applicable here. These are: 1) documents concerning partitions of properties, 2) grouping of properties, 3) attachment of properties, 4) eminent domain, 5) ownership records; 6) documents correcting room-space or describing an excess; 7) documents constituting a horizontal property regime; 8) subsequent documents arising from the preceding transactions; and 9) documents notified, expired or under reconsideration. In Soto-Rios, 662 F.3d 112, n.1, the United States Court of Appeals for the First Circuit noted that the effects of Law 216 had not been fully litigated in the case or in Puerto Rico generally.

Property Registry's delay in recording mortgages has on Puerto Rico's economy.  See, ACM Penfield, LLC. v. Jolley-Talley, 2016 WL 715761 (D.P.R. February 22, 2016)(so noting).  To this end, the preamble of Law 216 acknowledges that "commercial and mortgage banks l[end] capital...[to the extent] they [are] [sure] their investments are guaranteed by real property mortgages."  Law 216, Preamble (certified translation).[9]  So, delays in recording mortgages "hinder such loans from having true guarantees, thus making access to capital more difficult and consequently, [also hinder] economic development."  Id.

### C. Dispute

In this case, the parties have conflicting interpretations of Law 216 and the validity of the recordation of Mortgage Deed No. 140.  Ramos-García: (i) acknowledges that he is the sole legal owner of the Property; (ii) admits he did not take any steps to correct the defects notified by the Registrar of Property; and, (iii) claims Mortgage Deed No. 140 was recorded in error, as Law 216 only establishes a presumption of correctness which was rectified by filing the adversary case in bankruptcy court to obtain a judicial determination that the mortgage should not have been recorded because it lacks "tracto."  The bankruptcy court agreed with him, concluding that there is a defect in the recordation which prevents DLJ to claim a valid registered lien on the Property.

In contrast, DLJ contends that: (i) the mortgage was validly constituted, and duly recorded and perfected by operation of Law 216; (ii) the bankruptcy court's ruling is contrary to the clear intent of Law 216 and the public policy promoted by its enactment and Puerto Rico Registry Law; (iii)  Ramos-García is not the registered owner of the Property as a direct result of his lack of diligence, as he was advised of the errors that impeded recordation of his title and chose not to

---

[9] A certified translation of Law 216 was attached to the Memorandum and Order filed in ACM Pendield, LLC., 2016 WL 715761, and was examined by the undersigned when drafting this Memorandum and Order.

correct them; and (iv) DLJ pursued and complied with the legal requirements necessary to constitute and perfect its lien under the enacted norms at the time, resulting in the execution of a valid mortgage deed that was recorded in the Property Registry.

### D. Recent Puerto Rico Supreme Court Decision

The court is cognizant of the Puerto Rico Supreme Court's decision in Parras-Silvestry v. Ávila-Vargas, 2020 TSPR 05, 2020 WL 579222 (P.R. 2020) (Martínez-Torres, J.). In that case, petitioners presented two donation deeds to the Registrar of the Property on July 8, 2004.[10] On March 16, 2017, the Registrar notified a first defect ("falta"), claiming the apartments donated were not individualized in the Registry. Thus, the donations of the apartments lacked "tracto" to be recorded. The next day, the defect notice was vacated after the Notary who authorized the deeds in question clarified that although he titled the deeds "Donation[s]," he noted in the deeds that the apartments were not individualized, *and* requested *in the deeds* that the apartments be individualized at the time the donation deeds were recorded. Parras-Silvestry, 2020 WL 579222 at *1 (emphasis added). He added that, regardless of the title, the deeds had the dual purpose of individualizing the apartments and then donate them. Id.

On August 3, 2018, the Registrar of Property notified a second defect ("falta") – lack of release issued by the Treasury Department, which in her view, prevented registration of the donations. Petitioners challenged the notice of defect, claiming the donation deeds were automatically recorded in light of Law 216 and, for that reason, the Registrar of Property lacked the authority to "re-evaluate" ("re-calificar") the deeds. Id. at *2. The Registrar upheld her

---

[10] Mr. Querubín Parras-Aymat donated two apartments: one to petitioner Diana Parras-Silvestry and another to Dinorah Parras Silvestry. The apartments were at Condominio Querubín Parras. Parras-Silvestry, 2020 WL 579222 at *1.

original decision reasoning that: (i) the deeds sought the individualization of the apartments and, thus, were excluded from the automatic recordation contemplated by Law 216; (ii) the deeds were erroneously recorded under Law 216 because the individualizations could not be recorded; and as such, the donations lacked "tracto"; and (iii) even though the deeds appeared "recorded" under Law 216,[11] the Regulation enacted to enforce Law 216 provides a process to correct the erroneous recorded documents, which is exactly what she did in this case.

Unsatisfied, petitioners filed a "Recurso Gubernativo" claiming the Registrar of Property: (1) erroneously held that the deeds in question were excluded by Law 216; (2) the Regulation to enforce Law 216 did not authorize the Registrar to correct erroneously recorded deeds – which had a presumption of correctness under Law 216 – as it was contrary to Law 216.[12] After analyzing Law 216, the statute's purpose and the Registrar's decision, the Supreme Court reversed the decision.

First, the Court held that the donations were not excluded by Law 216. Id. at *3. Consequently, they were validly recorded in conformity with Law 216. Id.  Second, it noted that although Law 216 is silent as to the individualizations requests included in the deeds, the Registrar or Property erroneously assumed that individualizations and segregations are synonyms and mistakenly concluded that the individualizations were excluded by Law 216.  Third, it observed that Law 216 mandates the automatic recordation of the individualizations of the apartments and,

---

[11] According to Article 5 of Regulation No. 7988, a stamp including certain information is stamped to the documents recorded pursuant to Law 216. No official or certified translation of Regulation No. 7988 is available. Articles 14.2 and 14.3 of the Regulation provide a mechanism for Registrars to correct documents that were erroneously identified *by inadvertence* (i.e. documents excluded of Law 216 that were erroneously identified as recorded pursuant to Law 216).

[12] Administrative appeals from final decisions of the Registrars of Property are typically resolved by petitioning the Supreme Court of Puerto Rico for relief through a process called "Recursos Gubernativo."  See, P.R. Laws Ann. tit. 4A, XXI-B, § 27 .Petitioners filed two "Recursos Gubernativos" which the Supreme Court consolidated.

once recorded, they are presumed valid.  Id. at *5-*6.  Fourth, it pointed out that Registrars of

Property have no legal authority to assess ("calificar") the validity of those entries – even if they

lack successive track ("tracto").  Id. at *7.  Fifth, it recognized that any mistake resulting from the

application of Law 216 must be corrected in accordance with the Mortgage Law and applicable

Regulations,[13] only by the party affected by the mistake.  Id. at *8.

The decision does not, however, shed light on the questions included in this Certification,

inasmuch as the Puerto Rico Supreme Court was not presented with the opportunity to evaluate

the interplay between well-established principles of Mortgage Law, Law 216, and the party

allowed to challenge recordations made under Law 216.  Thus, certification is appropriate here.

The questions involve issues of Puerto Rico law, have important policy implications, and are

outcome determinative.

### III.    CONCLUSION

In compliance with P.R. Laws Ann. tit. 4 Ap. XXI-B, R. 25, an Appendix is included with

certified copy of (i) the Complaint filed in Adversary No. 15-00297 (BKT); (ii) the "Joint Motion

Submitting Factual Stipulations"; (iii) the "Motion for Summary Judgment"; (iv) the "Reply to

Defendant's Request for Summary Judgment"; and (v) the bankruptcy court's "Opinion and

Order."  The Clerk shall transmit this Certification to the Clerk of the Puerto Rico Supreme Court

pursuant to P.R. Laws Ann. tit. 4 Ap. XXI-B, R. 25.  The court abstains from ruling on DLJ's

appeal pending the Puerto Rico Supreme Court's decision.

---

[13] In Parras-Silvestry, the correction had to be made in accordance with Law No. 198 of August 8, 1979 and the relevant Regulation. While Law No. 198 was amended in 2015, the Supreme Court expressed that the amendment did not apply to the case because the deeds at issue were presented in 2004.  See, Parras-Silvestry, 2020 WL 579222 at *7.

**SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of March, 2020.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge
